**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **EUGENE BLAKELY, JR.,** ) | **CASE NO. 3:07CV2689** |
| ) | |
| **Petitioner,** ) | **JUDGE DONALD C. NUGENT** |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **JESSE WILLIAMS, WARDEN,** ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Respondent.** ) | |

Petitioner, Eugene Blakely, Jr., ("Blakely"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Blakely*, Lucas County Common Pleas Case No. CR-2002-03089.  Blakely filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on September 5, 2007, with the United States District Court for the Northern District of Ohio.  On May 20, 2008, Respondent filed his Answer/Return of Writ.  (Doc. No. 14.) Blakely filed a response on September 15, 2008.  (Doc. No. 16.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Blakely's Petition be denied.

**I.  Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Blakely's conviction as follows:

> {5} * * *  On August 29, 2002, at approximately 3:15 a.m., the victim, Willie McMillan, was sitting in the driver's seat of his vehicle, along with three passengers whom he had picked up while they were hitchhiking earlier in the evening. The group had just exited an apartment complex, the Weiler Homes, and the vehicle was parked in front of an apartment building. Nicole

>Gregory, the witness whose identification of appellant is at issue, was sitting in the right rear seat, behind the front passenger seat. Beth Slaughterbeck, one of Gregory's companions, was sitting in the front passenger seat. As the group was sitting in the car, and as McMillan had the vehicle in reverse but not in motion, a man approached the vehicle from the right side, crossed in front of the vehicle, approached the driver's side, and shot McMillan through the driver's side window.
>
>{¶ 6} Immediately after he was shot, McMillan began to back the car out of the lot. Before the car could travel the length of the street, he "slumped over" the steering wheel, having lost consciousness, the car crashed into a building, and Gregory and the other two passengers fled the vehicle. Gregory and Slaughterbeck ran to a house, pounded on the door, but then ran the quarter mile to Slaughterbeck's house, where they made two 9-1-1 calls. McMillan later died.

(Resp. Exh. 1.)

## II. Procedural History

### A. Conviction

On October 21, 2002, the Lucas County Grand Jury charged Blakely with murder in violation of Ohio Rev. Code ("O.R.C.") § 2903.02(A) together with a specification that he displayed, brandished, indicated possession of or used a firearm during the commission of the offense in violation of O.R.C. § 2941.145 and a specification that he was a repeat violent offender in violation of O.R.C. § 2941.149.

Blakely, represented by counsel, pled "not guilty" and the matter proceeded to a jury trial. On March 12, 2003, the jury reported to the court that it was deadlocked and the court declared a mistrial. (Resp. Exh. 4 at page 4,5.)

After obtaining new counsel at Blakely's request, a second jury trial went forward on August 26, 2003. Blakely was found guilty of murder together with the firearm specification. On September 9, 2003, the trial court sentenced Blakely to an aggregate prison term of 18 years to life.[1]  (Resp. Exh. 8.)

### B. Direct Appeal

On October 8, 2003, Blakely, through new counsel, filed a Notice of Appeal with the

---

[1] Blakely waived his right to a jury trial as to the repeat violent offender specification. At the sentencing hearing, the trial court found that the State had failed to prove beyond a reasonable doubt the elements necessary as to that specification. (Resp. Exh. 8.)

Court of Appeals for the Sixth Appellate District ("state appellate court") presenting two assignments of error:

1. The trial court committed prejudicial error by denying Defendant's Motion to Suppress and permitting the testimony of a prior out-of-court identfication by Nicole Gregory.
2. The trial court committed prejudicial error by permitting the prior testimony of witness Camille Crawford to be admitted into evidence.

(Resp. Exh. 11.)

On January 20, 2006, the state appellate court affirmed Blakely's conviction. (Resp. Exhs. 1, 13.)

On March 3, 2006, Blakely, *pro se*, filed a notice of appeal with the Ohio Supreme Court presenting the same assignments of error as in the appellate court. (Resp. Exh. 15.)

On June 7, 2006, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Resp. Exh. 17.) No further appeal was taken from this judgment.

### C. Petition for Postconviction Relief Pursuant to O.R.C. § 2953.21

On January 20, 2004, Blakely, *pro se*, filed a petition for postconviction relief. He claimed a Sixth Amendment right to counsel violation and several Fourteenth Amendment due process violations. (Resp. Exh. 18.)

On March 16, 2005, the state trial court denied the petition. (Resp. Exh. 21.)

On April 25, 2005, Blakely untimely appealed the denial of his postconviction relief. (See Resp. Exh. 4, page 24, entry dated 4/25/2005.) On May 5, 2005, the court dismissed the untimely appeal. (*Id*. at page 25, entry dated 5/5/2005.) No further appeal from that judgment was attempted.

### D. Federal Habeas Petition

On August 27, 2007, Blakely, *pro se*, filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

Ground for Relief No. 1: Petitioner's right to due process of law as guaranteed by the Fourteenth Amendment is violated where the trial court committed prejudicial error by denying Petitioner's motion to suppress the prior out-of-court identification and the subsequent in-court identification by state witness, Nicole Gregory, who initially told the police that she could not

3

> identify the shooter and gave a rather loose description of the shooter's clothes, but one year later identified Petitioner in a police photo array and testified at his trial that petitioner was the shooter, in direct contradiction to U.S. Supreme Court decision *Neil v. Biggers*, 409 U.S. 188 (1972).
>
> Ground for Relief No. 2: Petitioner's right to due process of law a (sic) guaranteed by the Fourteenth Amendment is violated where the trial court committed prejudicial error by permitting the prior testimony of State's witness Camille Crawford to be admitted as evidence.

(Doc. No. 1, Petition.)

Respondent acknowledges that both claims are exhausted.

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.  By contrast, a state court's decision involves

4

an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

### IV. Analysis

#### A. Ground One

The United States Supreme Court has held that an identification violates a defendant's right to due process where the procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967); *Neil v. Biggers*, 409 U.S. 188 (1972); *see also Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986). "It is the likelihood of misidentification which violates a defendant's right to due process." *Biggers*, 409 U.S. at 198, 93 S.Ct. 375. As the Supreme Court has stated, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Braithwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

The admissibility of identification evidence is governed by a two-step test. First, the defendant bears the burden of proving the identification procedure was impermissibly suggestive. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992); *Simmons v. United States*, 390 U.S. 377, 384 (1968). Only if the defendant meets this initial burden of proof must the court then proceed to the second step and determine whether, under the totality of circumstances, the identification was nevertheless reliable. *Id; see also Moore v. United States,* 1998 WL 537589, Case No. 97-4125 (6th Cir. 1998)(unpublished)(In a §2255, the petitioner did not show that a line-up was impermissibly suggestive and the district court

5

properly rejected the claim without reaching the reliability question.)

Suggestiveness generally depends "upon whether the witness's attention was directed to a suspect because of police conduct." 2-5 Crim. Con. Law § 5.05(2)(b) (2004).  In considering this, federal courts look to the effects of the circumstances of the pretrial identification, not whether law enforcement officers intended to prejudice a petitioner. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986).  In examining whether the identification procedure was impermissibly suggestive, the "primary evil to be avoided is a very substantial likelihood of irreparable misidentification."  *Biggers*, 409 U.S. at 198, 93 S.Ct. 375 (*citing Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

If the identification is deemed to be unduly suggestive, the court moves on to consider the reliability of the identification.  In determining the reliability of an identification, the court considers the totality of the circumstances, including (1) the witness's opportunity to view the defendant at the initial observation, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the defendant, (4) the witness's level of certainty at the pretrial identification, and (5) the length of time between the initial observation and the identification. *Id*. at 472 (*citing Manson v. Brathwaite*, 432 U.S. 98 (1977); *Biggers*, 409 U.S. at 199-200, 93 S.Ct. 375); *see also Howard v. Bouchard*, 405 F.3d 459, 472 (6th Cir. 2005).  These factors must be weighed against any "corrupting effect of the suggestive identification."  *Manson*, 432 U.S. at 114.

"If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, then no due process violation has occurred."  *Hill*, 967 F.2d at 230 (*quoting United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir. 1987).

If an out-of-court identification procedure is suggestive, the in-court identification could be suppressed as violative of due process if it is "tainted" by the out-of-court identification.  *Stovall v. Denno*, 388 U.S. 293 (1967) (*overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1988)).  A claimed violation of due process depends

6

upon the "totality of circumstances" surrounding it. *Id*.

In *United States v. Hill,* the Court allowed a witness, who had never before positively identified the defendant, make an identification in court five years after the crime. *Hill* 967 F.2d at 232. It applied *Biggers* to an in-court identification as "[a]ll of the concerns that underlie the *Biggers* analysis, including the degree of suggestiveness, the chance of mistake, and the threat to due process are no less applicable when the identification takes place for the first time at trial." *Id*.

The state appellate court concluded that the admission of Gregory's identification was not error:

> {¶ 7} During the [initial] police investigation that early morning and into the day, Gregory told police that she could not identify the shooter, and described the shooter simply as a black male with very short hair. One day after the shooting, Slaughterbeck identified appellant from a photo array, and she subsequently testified at appellant's first trial. Gregory was not contacted to testify at appellant's first trial, nor did she attempt to contact the police or detectives before the trial. Appellant's first trial was declared a mistrial.
>
> {¶ 8} Approximately one year after the mistrial, Detective Quinn obtained Gregory's phone number after she had contacted the prosecutor and wished to cooperate. Quinn contacted Gregory and asked to interview her at the station regarding McMillan's murder. Gregory appeared at the station, and she was asked to look at a photo array. The photo array was placed face down on a desk, and Gregory was told that the array may or may not contain a photo of the shooter. When the array was flipped over, Gregory identified appellant "within seconds," according to her own and Quinn's testimony. She was then interviewed further.
>
> {¶ 9} Appellant moved to suppress Gregory's identification from the photo array and any subsequent in-court identification. At the suppression hearing, Gregory testified that she had initially lied to the police the night of the crime when she told them that she was unable to identify the shooter. However, Gregory was unable, either at the station interview or at the suppression hearing, to describe the shooter in any more detail than she had originally.FN1 [omitted] Specifically, Gregory testified that the shooter was a black male, approximately six feet tall, approximately 200 pounds, and wearing all white or light gray clothing; she could not testify to any distinguishing features of the shooter.
>
> {¶ 10} The trial court denied appellant's motion to suppress the identification, finding nothing in the photo array itself or the procedure employed to be suggestive. The court also stated that any questions regarding whether Gregory sufficiently saw the shooter and her sparse initial and subsequent descriptions would be matters of credibility to be weighed by the finders of fact. One week later, Gregory testified at appellant's second trial to the crime and to her photo identification, and she made an in-court identification of appellant as the perpetrator.

{¶ 11} Appellant argues that the trial court abused its discretion by denying his motion to dismiss Gregory's out of court identification through the photo array. First, renewing an argument from the suppression hearing, appellant argues that the lapse of one year between the event and the identification engenders a high likelihood of misidentification. Second, appellant argues that Gregory had not viewed the shooter for a sufficient length of time, and was unable to describe him in sufficient detail, to be able to identify him one year later.

\* \* \*

{¶ 16} Here, appellant does not take issue with whether the confrontation procedure itself was unduly suggestive; appellant focuses upon the reliability of Gordon's [sic] identification. Upon our review of the photographic display, we agree with appellee that it is not unduly suggestive. Appellant is depicted along with five other men, all approximately the same age, with the same skin tone and hair. Appellant's photograph has no distinguishing features which would make it stand out from the other photos. As appellant has argued the matter, the only question remaining is whether application of *Biggers*' reliability factors is required when the confrontation procedure is not unduly suggestive.

{¶ 17} Ohio appellate courts have held that where the confrontation procedure is not unduly suggestive, the due process analysis ends and no further inquiry into reliability is required. *State v. Armstrong*, 11th Dist. Nos.2001-T-0120, 2002-T-0071, 2004-Ohio-5635; *State v. Taylor*, 1st Dist. No. C-020475, 2004-Ohio-1494. The underlying rationale must be that, where the confrontation procedure is not suggestive, any doubts as to the witness' reliability should dissipate. Contrarily, in *State v. Marbury*, 10th Dist. No. 03AP-233, 2004-Ohio-3373, where the defendant argued on appeal that the identification was unreliable although the confrontation procedure was not suggestive, the court did proceed to conduct a *Biggers* analysis of the overall reliability of the identification. This court has taken both approaches. See *State v. Castilleja* (May 31, 1996), 6th Dist. No. L-95-049; *State v. Williams* (Mar. 20, 1998), 6th Dist. No. L-96-353.

{¶ 18} At the suppression hearing, the trial court held that since the confrontation procedure was not suggestive, indicia of the reliability of Gordon's [sic] identification were matters going to her credibility and were best left to a jury's determination. This approach accords with the philosophy expressed in dicta by *Manson*, wherein the Court noted: "It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthiness \* \* \*. Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification \* \* \*." *Manson v. Brathwaite*, 432 U.S. at 113. "Evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Id.* at 116. Given this, we must conclude that, since the reliability prong is alone sufficient for admissibility where suggestiveness exists, reliability need not be determined in a suppression hearing when the court finds that the confrontation procedure is not suggestive; that is, where suggestiveness does not exist, a reliability determination is not necessary.

> {¶ 19} In sum, despite the indicia of unreliability surrounding the circumstances of Gordon's [sic] witnessing of the crime (the year lapse between the crime and the identification; her prior inability or unwillingness to identify or describe the shooter; the fleeting seconds in which she viewed the shooter; the lack of any additional details Gordon [sic] gave in her subsequent identification), the admission of her identification based upon the non-suggestive procedure was not error. She identified appellant from the photo array within seconds, she was subject to cross-examination by appellant, and the jury could weigh the aforementioned circumstances surrounding her identification. To express the conclusion in terms of the underlying rationale, the reliability of the identification procedure employed dispels the necessity of proceeding to a *Biggers* analysis as to whether the circumstances of her identification were reliable, and any remaining doubts as to those circumstances were properly left for a jury's determination.

(Resp. Exh. 1.)

Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and that presumption of correctness extends to factual findings of a state appellate court based on the state trial record. *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003), *cert. denied*, 534 U.S. 842 (2004) (*citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). Thus, the state court's factual finding regarding the composition of the photo array is entitled to deference.

Blakely argues that the trial judge committed prejudicial error in denying the motion to suppress the prior out-of-court identification by witness Gregory. He also contends that the photo array in which she identified him was impermissibly suggestive; however, he offers no details to rebut the contrary finding of the state appellate court. The record reflects no suggestive aspect to the out-of-court identification. The photo display depicted Blakely along with five other men of approximately the same age and the same skin tone and hair. (Resp. Exh. 1, ¶16.) Blakely's photograph had no distinguishing features. *Id*. Furthermore, when the police officer showed Gregory the photo array, it was placed face down on a desk and she was told that it may or may not contain a photo of the shooter. *Id* at ¶ 8. After the array was turned over, she identified Blakely "within seconds." *Id*.

The state appellate court's ruling with respect to the identification procedure was neither contrary to nor an unreasonable application of clearly established federal law. Blakely's argument as to the suggestiveness of the photo array is easily dismissed as he

9

offers no specific support for his claim.  Defense counsel did not challenge the photo array as suggestive.  Both the trial and appellate courts found it was not suggestive. Without clear and convincing evidence to the contrary, the state court's factual findings are presumed correct.  As the out-of-court identification was not suggestive, no further analysis regarding reliability is necessary.  This identification did not violate Blakely's due process rights.

The state appellate court was asked only to determine whether the trial court committed prejudicial error by denying Blakely's motion to suppress and subsequently permitting testimony at trial regarding the out-of-court identification.  Blakely, in the instant petition, goes beyond his assignment of error in the state appellate court and challenges both the out-of-court identification and the subsequent in-court identification by Gregory.  No issue regarding exhaustion or procedural default has been raised.  Consequently, the court will address the reliability of the in-court identification.

There is no doubt that in-court identifications are suggestive.  A defendant seated at a trial table is inherently more suggestive than a line-up or photo array.  In *United States v. Hill*, 967 F.2d 226, the Court applied the two-step *Biggers* test to an in-court identification. It assumed that the in-court identification of defendant was impermissibly suggestive and then considered the reliability factors.  The *Hill* Court determined that the identification was sufficiently reliable and that the district court had properly left it to the jury to decide what weight to ultimately give to the identification.  Also, the defense was free to attack the reliability of the identification vigorously and to present its arguments to the jury.  The Sixth Circuit concluded that the witness was properly allowed to identify the defendant in court. As the Supreme Court indicated in *Manson*, an identification through a non-suggestive photo array, as Gregory did here, would enhance the force of the identification at trial and might avoid the risk that the evidence would be excluded as unreliable.[2]  *Manson*, 432 U.S.

---

[2]Noting that the first trial ended in a hung jury, the Court will not assess this issue on harmless grounds, as the state appellate court did when it relied on another witness, Beth Slaughterbeck, who identified Blakely.  Slaughterbeck, was a passenger in the right front seat of the car at the time of the shooting.  She testified that she saw Blakely run up on her

at 117.

Although only directly addressing the admission of trial testimony regarding Gregory's out-of-court identification, the state appellate court did undertake an analysis of considerations similar to those required in *Biggers*. (Id. at ¶ 19.) While noting some indicia of unreliability, ("the year lapse between the crime and the identification; [Gregory's] prior inability or unwillingness to identify or describe the shooter; the fleeting seconds in which she viewed the shooting; the lack of any additional details [she] gave in her subsequent identification,") the court ultimately surmised that based on the "totality of the circumstances" the trial testimony of Gregory was properly admitted. She identified Blakely from the photo array within seconds, she was subjected to cross-examination, and the jury was given the opportunity to weigh the circumstances surrounding her identification.

While Gregory, from her rear passenger seat in the vehicle, did not have the best opportunity to observe the shooter and her description was somewhat vague, she did identify Blakely with a high level of certainty through a non-suggestive pretrial photo array. Even with a year delay from an initially reluctant witness, the Court cannot say, considering the totality of the circumstances of this case, that there is "a very substantial likelihood of irreparable misidentification." Short of that point, it is up to the jury to weigh the strength of Gregory's testimony. *See Manson*, 432 U.S. at 105 (*citing Simmons v. United States*, 390 U.S. 377, 395-96 (1969)). No due process violation occurred.

### B. Ground Two

Blakely contends that reading witness Camille Crawford's testimony from his first trial into the record at his second trial lacked the "indicia of reliability" and therefore admission violated his Sixth Amendment right to confront the witnesses against him. He

---

side and cross in front of the vehicle. (Resp. Exh. 23, Tr. at 239-244; 274-284.) She testified that Blakely came over to the driver's side of the car and shot the victim at close range. Slaughterbeck then identified petitioner from a photo array one day after the incident. (Resp. Exh. 1, ¶¶ 7, 20; Exh. 23 a 251; *Blakely*, 2006 Ohio App LEXIS 154).

argues that he was denied "the value of cross-examination in exposing falsehoods and bringing out the truth." (Traverse, page 9.) He further argues that the state did not establish that Crawford was "unavailable" to testify in person.

Respondent asserts that this claim is noncognizable in federal habeas review because there are no constitutional errors that denied Blakely fundamental fairness. Furthermore, Respondent argues that the rules of evidence are not constitutionally based and therefore cannot dictate constitutional results. Respondent also contends that the state appellate court, to the extent necessary, correctly applied *Crawford v. Washington*.

The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This is a "procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Haliym v. Mitchell*, 492 F.3d 680, 701 (6th Cir. 2007) (*quoting Crawford v. Washington*, 541 U.S. 36, 62 (2004)). This guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause bars the admission of testimonial statements made by witnesses out of court unless the declarant is unavailable and the accused has had a previous opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 68-69; *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004). This bright-line rule abrogated, in part, the prior rule of *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), that the admission of hearsay did not violate the Confrontation Clause if the declarant was unavailable and the statement fell under a "firmly rooted hearsay exception" or otherwise bore "particularized guarantees of trustworthiness." *See Crawford*, 541 U.S. at 60, 68; *United States v. Saget*, 377 F.3d 223, 226-27 (2d Cir. 2004); *Horton v. Allen*, 370 F.3d 75, 83 (1st Cir. 2004); *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004).

The Supreme Court further held that, for Confrontation Clause purposes, the term "witnesses" does not encompass all hearsay declarants, but only those who "bear testimony." *Crawford*, 541 U.S. at 51; *see also United States v. Martinez*, 430 F.3d 317,

12

328-29 (6th Cir. 2005); *United States v. McClain*, 377 F.3d 219, 221 (2d Cir. 2004). For those who "bear testimony," however, "the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68-69; *see also United States v. Jones*, 371 F.3d 363, 369 (7th Cir. 2004). The Court declined to provide a comprehensive definition of "testimonial," but added that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68; *Martinez*, 430 F.3d at 329; *Cromer*, 389 F.3d at 671-72.

Supreme Court precedents have established that prior testimony may be admitted into evidence under the Confrontation Clause only upon a showing of unavailability. *Brumley v. Wingard*, 269 F.3d 629, 640-41 (6th Cir. 2001); *Roberts* at 65, 100 S.Ct. 2531; *Mancusi v. Stubbs*, 408 U.S. 204, 212-13 (1972); *Mattox v. United States*, 156 U.S. 237 (1895); *Barber v. Page*, 390 U.S. 719 (1968) ("[T]here has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant."). In *White v. Illinois* 502 U.S. 346, 354 (1992), the Supreme Court further analyzed *Roberts* and stated: "*Roberts* stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." The Supreme Court has held that "a witness is not 'unavailable' for purposes of . . . the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber*, 390 U.S. 724-25.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus. *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001). Under the AEDPA, the states have wide latitude in

13

ruling on evidentiary matters. *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001). In considering a habeas corpus petition a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United States Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846 (6th Cir. 2000).

The state appellate court summarized the trial testimony of Camille Crawford as follows:

> {¶ 21} * * * Crawford's admitted testimony contained the following facts: Crawford had been an acquaintance of appellant for several months when, on the night of August 29, 2002, at approximately 2:55 a.m., she called appellant to pick her up for a ride. He did so shortly after her call, and together they drove to the Weiler Homes. Crawford testified that appellant then left her alone for approximately three to four minutes; during those minutes, she heard five or six gunshots. Shortly after the gunshots, appellant ran back to where Crawford was sitting outside a Weiler Homes building. She said appellant had a silver gun in his hand, and was repeating, "come on, let's go, let's go, we got to go." Crawford then left with appellant in his car, and appellant took her to her home, dropped her off, then returned after approximately an hour. When he returned, he told Crawford that he had killed McMillan, because he "owed him"-for what, Crawford was unsure. A few days later, appellant telephoned Crawford and told her that he was in Chicago. Crawford contacted police approximately one week after the shooting.
>
> {¶ 22} Crawford testified at appellant's first trial. Attempts were made to secure Crawford as a witness before the instant trial; this trial date was postponed once, in part, upon her failure to appear despite service of a warrant. After the postponement, another subpoena was issued for her appearance, and also a material witness warrant. Ultimately, Crawford failed to appear to testify at this trial. The prosecution moved to admit Crawford's prior trial testimony into evidence, and appellant objected to it on hearsay grounds and as violative of his right to confrontation. After some discussion at the bench and in chambers, the trial court found Crawford unavailable as a witness, and allowed the prosecution to read aloud a transcript of Crawford's testimony from appellant's first trial, expressly pursuant to the hearsay exception of Evid.R. 804(B)(1) allowing prior testimony of an unavailable witness.

(Resp. Exh. 1.)

As to Camille Crawford's unavailability, the state appellate court wrote:

> {¶ 34} Quinn testified, under oath, that he had served the subpoena issued

14

> August 4 upon Crawford, and had spoken to her, and she had promised to attend the August 18 trial. However, she did not attend, and the trial was continued to August 25. Quinn then testified that he was unable to serve that subpoena upon Crawford, despite repeated visits to her residence; during that time, he spoke to her twice by telephone, and she had verbally promised to testify at the August 25 trial. On August 20, notified of Quinn's unsuccessful efforts to locate Crawford, the prosecutor requested the court to issue a material witness warrant to secure Crawford's attendance, and said warrant was in fact issued that same day. Quinn testified that he repeatedly attempted to serve that warrant and was unsuccessful in locating Crawford. He and other detectives also attempted to locate Crawford at places other than her residence, such as hospitals and the coroner's office, and also contacted Crawford's known acquaintances during their search.
>
> {¶ 35} "Several efforts to subpoena a witness at different addresses is [sic] indicative that the proponent of the witness' testimony has been unable to secure attendance of the witness by process." *State v. Bragg* (1981), 2 Ohio App.3d at 195. Likewise, the state's efforts to locate Crawford, to which Detective Quinn testified, constituted "reasonable means" other than process. *See, e.g., State v. Carpenter* (1997), 122 Ohio App.3d 16, 25; *State v. Madison*, 64 Ohio St.2d at 328 (also searching hospitals and morgues). Thus, admission of Crawford's prior trial testimony neither violated appellant's right of confrontation nor was in error pursuant to Evid.R. 804. Appellant's second assignment of error is not, therefore, well-taken.

*Id.*

The state appellate court considered whether Camille Crawford was properly deemed "unavailable." It also considered whether her testimony was admitted as required by state evidentiary rules. It referred to the Sixth Amendment's Confrontation Clause and cited to the holdings of *Crawford v. Washington* and *Ohio v. Roberts*. The state appellate court concluded that after *Crawford v. Washington*, reliability need no longer be determined as a prerequisite for admissibility of prior testimony to pass muster for the federal right of confrontation. In *Crawford v. Washington*, the Supreme Court stated that "where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity to cross-examination." *Id*. at 68. The state appellate court ruled that the prosecution demonstrated a reasonable good-faith effort to secure the presence of the witness. *See Barber*, 390 U.S. 724-25. The court concluded that the admission of Camille Crawford's prior trial testimony based upon unavailability neither violated appellant's right of confrontation nor was in error pursuant to Evid.R. 804.

Nothing in this finding was contrary to rulings of the United States Supreme Court

on a similar question of law, nor did the state court decide the issue differently than the Supreme Court in a case with materially indistinguishable facts. Consequently, this Court finds that there has been no infringement of a right guaranteed by the United States Constitution.

### V. Conclusion

For the foregoing reasons, the Magistrate Judge recommends that Blakely's Petition be denied.

                                                           s/Greg White
                                                           U.S. MAGISTRATE JUDGE

Date:   November 20, 2008

**OBJECTIONS**
**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**